# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| FRANCISCO G ZARATE, | § | CIVIL ACTION NO. M-11-210 |
| | § | |
|     Plaintiff/Counter-Defendant, | § | |
| VS. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Defendant/Counter-Plaintiff/ | § | |
|     Third-Party Plaintiff, | § | |
| VS. | § | |
| | § | |
| JUAN CANTU, *et al.*, | § | |
| | § | |
|     Third-Party Defendants. | § | |
| | § | |
| COMMUNITY ACTION COUNCIL OF | § | CIVIL ACTION NO. M-12-18 |
| SOUTH TEXAS, | § | Consolidated into |
| | § | Civil Action No. M-11-210 |
|     Plaintiff, | § | |
| VS. | § | |
| | § | |
| FRANCISCO ZARATE, *et al.*, | § | |
| | § | |
|     Defendants/Third-Party | § | |
|     Plaintiff/Cross-Plaintiffs, | § | |
| VS. | § | |
| | § | |
| DAVID FLORES, | § | |
| | § | |
|     Third-Party Defendant/Cross- | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Defendant. | § | |

**ORDER GRANTING IN PART THIRD-PARTY PLAINTIFF UNITED STATES'
MOTION FOR SUMMARY JUDGMENT AGAINST THIRD-PARTY
DEFENDANT CANTU**

## I.      Factual and Procedural Background

Now before the Court is Third-Party Plaintiff United States of America's Motion for Summary Judgment against Third-Party Defendant Juan Cantu.  (Doc. 66).[1]  The central issues presented by this consolidated case are who caused Community Action Council of South Texas ("CAC") to fail to timely pay its quarterly payroll taxes, resulting  in Internal Revenue Service ("IRS") penalties and interest, and who may be assessed the amounts owed.  CAC alleges that it is a nonprofit organization formed over 30 years ago for the purpose of providing a variety of services to low-income residents of Starr, Jim Hogg, and Zapata Counties in Texas.  12cv18 at (Doc. 6-2 at ¶ 3).  CAC has since expanded to Duval and Brooks Counties and now concentrates on providing basic health and transportation services to this five-county area.  *Id.*  According to CAC, beginning on or before 2004, its former Executive Director Francisco Zarate began a practice of failing to submit full payment of quarterly payroll taxes to the IRS as required by law. *Id.* at ¶ 5.  Such payments consisted of "FICA" amounts withheld from employees' wages and matching payments from CAC.  *Id.*  The practice continued until November 29, 2006, when CAC's Board of Directors (hereinafter "Board") was informed that CAC owed over $2 million in unpaid taxes.  *Id.* at ¶ 6.  As a result, CAC has undergone "drastic changes" consisting of a substantial reduction in staff and the termination of contracts for operating various programs.  *Id.* at ¶ 7.  CAC has experienced "great difficulty in keeping its doors open to provide services to the community" and in "get[ting] control of the financial aspects of its operations."  *Id.*  By the end of 2007, CAC owed more than $3 million in delinquent payroll taxes.  *Id.*

---

[1]  Unless otherwise noted, all citations to the record are to docket entries in Civil Action No. 11cv210, into which Civil Action No. 12cv18 was consolidated.

Zarate initiated Civil Action No. 11cv210 on July 15, 2011, when he filed a complaint against the United States seeking refund and abatement of the IRS assessments against him for "trust fund" penalties owed by CAC for three quarterly tax periods, claiming that the failure to pay was not attributable to him but to CAC's Chief Financial Officer ("CFO"), David Flores. (Doc. 1).  The United States counterclaimed against Zarate seeking payment of the balance due, and brought a third-party complaint against current CAC Executive Director Juan Cantu, Doroteo Garza, and Leo Bazan, claiming that these parties are liable for CAC's unpaid taxes for various quarterly tax periods.  (Doc. 5).[2]  On February 16, 2012, the Court entered default against Garza and Bazan.  (Docs. 29-32).  The United States now moves for summary judgment against Cantu, claiming that the evidence establishes his personal liability under 26 U.S.C. § 6672 for trust fund penalties assessed against him for the second, third, and fourth quarters of 2007 in the total amount of $418,377.06 plus interest.  (Doc. 66).  Upon review of the Motion and Cantu's response (Doc. 73), in light of the relevant law, the Court finds that the Motion should be granted in part for the following reasons.

## II.    Analysis

### A.    Summary Judgment Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party moving for summary

---

[2]  Cantu was assessed taxes due and owing for the second, third, and fourth quarters of 2007, Doroteo Garza for the first and fourth quarters of 2006, and Bazan for the first, second, and third quarters of 2007. (Doc. 5).   As of September 14, 2011, after credits, the balances due and owing were allegedly $418,377.06 plus interest from Cantu, $335,897.02 plus interest from Doroteo Garza, and $625,054.03 plus interest from Bazan.  *Id.*

judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c), (e). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

**B.      Overview of Trust Fund Penalty and Burden of Proof**

The Internal Revenue Code requires employers to withhold Social Security contributions and federal income taxes from their employees' wages. *Slodov v. United States*, 436 U.S. 238, 242-43 (1978); *Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1453 (5th Cir. 1993); *see also* 26 U.S.C. §§ 3102(a), 3402(a). "The withheld sums are commonly referred to as 'trust fund taxes,' reflecting the Code's provision that such withholdings are deemed to be 'a special fund in trust for the United States.'" *Slodov*, 436 U.S. at 243 (quoting 26 U.S.C. § 7501(a)); *see also*

*Barnett*, 988 F.2d at 1453 (citing same).  "If an employer withholds these trust fund taxes but fails to pay them over to the United States, the employee is nevertheless credited with payment." *Cash v. United States*, 961 F.2d 562, 565 (5th Cir. 1992) (citing *Slodov*, 436 U.S. at 243).  "Thus, unless the Government has recourse against the person or persons responsible for nonpayment, the taxes will be lost."  *Id.* (citing same).  To prevent this loss of revenue, § 6672(a) of the Code provides in relevant part as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over….

26 U.S.C. § 6672(a); *see also id.*[3]  In sum, § 6672(a) imposes a "penalty"[4] equal to the amount of the unpaid taxes on any such person (1) required to collect, account for, *or* pay over the withheld taxes, commonly referred to as a "responsible person," (2) who "willfully" fails to do so. *Conway v. United States*, 647 F.3d 228, 232 (5th Cir. 2011); *Barnett*, 988 F.2d at 1453; *see also Slodov*, 436 U.S. at 244-45.[5]  Once the United States offers an assessment into evidence, "the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness." *Barnett*, 988 F.2d at 1453.  Here, the United States has offered into evidence its assessments

---

[3]  The Code further defines "person" as "includ[ing] an officer or employee of a corporation…who as such officer [or] employee…is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

[4]  The Fifth Circuit has explained that "[a]lthough denominated a 'penalty,' the liability imposed by section 6672 is not penal in nature since it 'brings to the government only the same amount to which it was entitled by way of the tax.'" *Turnbull v. United States*, 929 F.2d 173, 178 n.6 (5th Cir. 1991) (quoting *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir.1970)).  In other words, § 6672 authorizes collection of the taxes due, not both the taxes due and an additional penalty, and therefore "'is simply a means of ensuring that the tax which is unquestionably owed the Government is paid.'"  *Id.* (quoting same).

[5]  The Supreme Court in *Slodov* held that "the phrase '[a]ny person required to collect, truthfully account for, *and* pay over any tax imposed by this title' was meant to limit § 6672 to persons responsible for collection of third-party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question."  *Slodov*, 436 U.S. at 250 (emphasis added).

against Cantu for trust fund penalties for the second, third, and fourth quarters of 2007—that is, those quarters ending on June 30, 2007, September 30, 2007, and December 31, 2007, respectively.  (Doc. 66-7).  Therefore, to defeat summary judgment, Cantu must raise a genuine fact issue as to whether he can meet his burden to disprove liability under § 6672.

1.    **Responsible-Person Status**

In the context of determining responsible-person status, the Fifth Circuit has observed that "we cannot ignore the extensive caselaw that narrowly constrains a factfinder's province in § 6672 cases."  *Barnett*, 988 F.2d at 1454.  In other words, "certain facts will almost invariably prove dispositive of a finding of responsibility."  *Id.*  The Circuit "'generally takes a broad view of who is a responsible person,'" and further observed in *Barnett* that "cases *not* finding § 6672 responsibility are relatively few and far between."  *Id.* at 1454 (quoting *Gustin v. Internal Revenue Service*, 876 F.2d 485, 491 (5ᵗʰ Cir. 1989)), 1456 (emphasis in original).  *Barnett* details the Fifth Circuit's "broad view" of responsible-person status as follows:

> Responsibility…is determined by looking to one's status within a corporation—that is, one's duty and authority to withhold and pay taxes. Unlike the willfulness element of the statute, responsibility does not require knowledge that one has that duty and authority. The crucial inquiry is whether the person had the "effective power" to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed.  Thus, a person may be a responsible person for purposes of the statute even though he does not know that withholding taxes have not been paid, and he does not cease to be a responsible person merely by delegating the responsibility to others.  Moreover, the statute expressly applies to "any" responsible persons, not just to the person most responsible for the payment of the taxes.  There may be—indeed, there usually are—multiple responsible persons in any company. That another person in the company has been delegated the jobs of withholding and paying employees' taxes and generally paying creditors is beside point.  The crucial inquiry is whether a party…, by virtue of his position in (or vis-a-vis) the company, could have had "substantial" input into such decisions, had he wished to exert his authority.

*Id.* at 1454-55 (internal citations omitted).  *Barnett* further directs that when a party lacks the precise responsibility of withholding or paying employees' taxes, courts look to six circumstantial "indicia" of authority giving rise to responsible-person status:

> whether the person (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks.

*Id.* at 1455; *see also Conway*, 647 F.3d at 233 (quoting same).

The Court finds, upon review of the evidence submitted, that the United States is entitled to summary judgment on the issue of Cantu's responsible-person status.  That evidence establishes that Cantu, an employee of CAC since 1974, became its Director of Operations sometime in the 1980s.  (Doc. 66-2 at pp. 7, 15).  Cantu continued as the "number two" person in charge until Zarate resigned and the Board appointed Cantu as CAC's Interim Director on April 20, 2007.  *Id.* at pp. 7, 15-16, 20; (Doc. 66-3 at p. 99).  Cantu held this position until December 2007, when the Board named him CAC's Executive Director.  (Doc. 66-2 at pp. 7, 20).  Cantu agrees that the Executive Director, a position he still holds, is "the guy in charge" at CAC.  *Id.* at pp. 73-74.  At all times relevant to this suit, CFO Flores prepared each IRS "Form 941" for the payment of CAC's quarterly payroll taxes.  *Id.* at pp. 37, 57.  While Director of Operations, Cantu had the authority to sign these forms in Zarate's absence, and did on some occasions.  *Id.* at pp. 43-44.  As Interim and then Executive Director, Cantu has reviewed and signed all Form 941s, including those for the second, third, and fourth quarters of 2007.  *Id.* at pp. 37, 42; *see also* Doc. 66-4.  Further, he helped to negotiate, and signed, an installment agreement with the IRS that provides for monthly payments toward CAC's unpaid tax liabilities.  (Doc. 66-2 at pp. 50-51, 80).  Cantu also admits that he has the "ultimate responsibility" to determine financial

policy for CAC, and that he hires and fires employees, decides which of CAC's creditors to pay, and personally signs all checks issued by CAC. *Id.* at pp. 47-48, 75-77, 80. In sum, not only did Cantu review and sign the Form 941s for the quarters for which he has been assessed, but he also has every applicable indicia of responsible-person status.[6] The Court therefore finds that the United States has established as a matter of law that Cantu had the "effective power" to pay the taxes owed by CAC and assessed against him.

### 2.    Willfulness

"When a responsible person becomes aware of tax liability, he has 'a duty to ensure that the taxes [are] paid before any payments [are] made to other creditors.'" *Conway*, 647 F.3d at 234 (quoting *Barnett*, 988 F.2d at 1457). Thus, "[a] responsible person acts willfully if 'he knows the taxes are due but uses corporate funds to pay other creditors' or 'he recklessly disregards the risk that the taxes may not be remitted to the government.'" *Id.* (quoting *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999)). "Where there is undisputed evidence that the responsible person directed payments to other creditors while knowing of the tax deficiency, willfulness is established as a matter of law." *Id.*

Willfulness does not require "a bad motive or evil intent," *Barnett*, 988 F.2d at 1457, and conversely, "[g]ood intentions are irrelevant: a party is liable for failing to remit trust-fund taxes irrespective of *why* he failed to do so," *In re Texas Pig Stands, Inc.*, 610 F.3d 937, 942-43 (5th Cir. 2010) (emphasis in original). As an example of "good intentions" that fail to exculpate a responsible person from a finding of willfulness, the Fifth Circuit cited to the court's observation in *Collins v. United States*, 848 F.2d 740 (6th Cir. 1988), that "'[i]t is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the

---

[6] The "ownership of stock" indicium does not apply here, as a nonprofit corporation such as CAC does not have stockholders.

corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business.'" *Texas Pig Stands*, 610 F.3d at 942-43 (quoting *Collins*, 848 F.2d at 741-42).   Further, the expectation that sufficient funds for the payment of the taxes will be available in the future does not disprove willfulness.  *See Newsome v. United States*, 431 F.2d 742, 746 (5th Cir. 1970) ("[W]hen the responsible officer…knows that the withheld funds are being used for other corporate purposes, regardless of his expectation that sufficient funds will be on hand on the due date for payment over to the government," "he subjects himself to liability under [§] 6672 when he voluntarily and consciously 'risks' the withheld taxes in the operation of the corporation, and subsequently the corporation is unable to remit the withheld taxes.").

In light of the above, and upon review of the evidence, the Court finds that summary judgment is warranted on the issue of whether Cantu acted willfully.   Cantu admits that he first learned of CAC's tax liabilities in late November 2006, when he was informed by Zarate during a meeting.  (Doc. 66-2 at pp. 17-18).  At the time Cantu became Interim Director in April 2007, he knew that those liabilities were "in the millions of dollars."  (Doc. 66-3 at p. 143; Doc. 73-6).   According to Cantu, he accepted the positions of Interim and then Executive Director at the insistence of the Board, who instructed him to not let CAC shut down.  (Doc. 66-2 at pp. 21, 41, 58-59; Doc. 73-6).   Cantu testified that if he had decided to pay outstanding or current taxes before any other obligation, CAC would not have been able to sustain its day-to-day operations, "so programs would have been closed and employees would have been terminated and that's not what the board wanted me to [do]."  (Doc. 66-3 at p. 102).  Instead, under Cantu's direction CAC failed to pay its payroll taxes during the second, third, and most of the fourth quarters of 2007 while Cantu implemented measures to reduce payroll costs and administrative expenditures.  (Doc. 66-2 at pp. 22-24, 41-42, 97; Doc. 66-3 at p. 98; Doc. 73-6).  During this time, CAC

continued to pay its employees' salaries, including Cantu's, and to pay vendors. (Doc. 66-2 at pp. 59, 76-77, 79; Doc. 66-8). CAC began meeting its current obligations to the IRS during the final two payroll periods of December 2007. *Id.* at p. 49.

Cantu's response attempts to argue that he should not be considered a responsible person who acted willfully because he acted at the direction of the Board in failing to pay the taxes for the applicable quarters, while taking steps to ensure that CAC could eventually meet its current payroll tax obligations. (Doc. 73). This amounts to a "good intentions" defense, and is therefore unavailing under Fifth Circuit precedent. Again, all that is required to show willfulness is that the responsible person knew that the taxes were due and directed that payments be made to other creditors instead. The summary judgment evidence establishes Cantu's knowledge that CAC was not paying its payroll taxes during the quarters for which he has been assessed, and that during this time he authorized payment of other creditors. That he was simultaneously taking steps to place CAC into a position where it could meet its tax obligations in the future does not disprove willfulness. Therefore, the United States has established that Cantu acted willfully as a matter of law.

## C.    Abatement and Other Issues

Although partly couched in terms of his opposition to a finding of responsible-person status and willfulness, Cantu's response raises other arguments that pertain to issues apart from those inquiries. (Doc. 73). Cantu points to evidence that CAC, under his direction, made voluntary payments of $475,150.00 toward its past due trust fund taxes apart from any payments made under the installment agreement. (Doc. 73; Doc. 73-3 at pp. 1-53; Doc. 73-4 at pp. 54-88; Doc. 73-6; *see also* Doc. 66-2 at pp. 51-52; Doc. 66-3 at pp. 103-06). Cantu also claims that CAC designated $235,150.00 of that amount for payment of the trust fund taxes for the second

quarter of 2007.  (Doc. 73; Doc. 73-3 at pp. 1-53; Doc. 73-4 at pp. 54-88; *see also* Doc. 66-3 at p. 116).  Cantu thus contends that he should receive an "abatement" of the second quarter penalty assessed against him, and that the Court should "equitably allocate" the remainder of the voluntary payments to the other quarters for which he was assessed.  (Doc. 73).  According to Cantu, equity weighs in his favor because he was responsible for enabling CAC to meet its current tax obligations and to begin to satisfy its past due liabilities through the payments made voluntarily and under the installment agreement.  (Doc. 73; *see* Doc. 73-4 at pp. 89-92; Doc. 73-5 at pp. 93-119; Doc. 73-6).  Cantu further contends that he should receive an abatement of $4,186.00 garnished from his 2010 income tax return, and finally that the assessment for the fourth quarter of 2007 is incorrect as it includes $33,841.51 in taxes other than trust fund taxes. (Doc. 73; Doc. 73-5 at pp. 120-37; Doc. 73-6).

The difficulty with Cantu's arguments is that they rely largely on his own characterization of the evidence, and a single, cited authority from outside this Circuit.  (Doc. 73); *see New Terminal Stevedoring Inc. v. M/V Belnor*, 728 F.Supp.2d 62, 66 (D.Mass. 1989) (where officer brought successful suit to recover funds on corporation's behalf and was responsible for enabling IRS to intervene in separate suit to claim priority to those funds, court equitably allocated funds to officer's trust fund obligations under § 6672).  Further, as noted *supra*, these arguments do not disprove Cantu's responsible-person status, or that he acted willfully.  Still, absent a response from the United States with respect to these arguments, which are essentially challenges to the *amount* of Cantu's trust fund liability, the Court finds that it cannot finally determine that amount.

III.     **Conclusion**

For the foregoing reasons, the Court hereby **ORDERS** that the United States' Motion for Summary Judgment is **GRANTED** to the extent that it seeks a judgment that Cantu was a responsible person who acted willfully in failing to pay CAC's trust fund taxes for the second, third, and fourth quarters of 2007.  To the extent that the Motion seeks a judgment that Cantu is indebted to the United States for the full amount of the trust fund taxes assessed against him, the Motion is **DENIED**.

SO ORDERED this 26th day of September, 2012, at McAllen, Texas.

Randy Crane
United States District Judge