UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FRANCISCO G ZARATE, | § | CIVIL ACTION NO. M-11-210 |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| VS. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant/Counter-Plaintiff/ | § | |
| Third-Party Plaintiff, | § | |
| VS. | § | |
| | § | |
| JUAN CANTU, *et al.*, | § | |
| | § | |
| Third-Party Defendants. | § | |
| | § | |
| COMMUNITY ACTION COUNCIL OF | § | CIVIL ACTION NO. M-12-18 |
| SOUTH TEXAS, | § | Consolidated into |
| | § | Civil Action No. M-11-210 |
| Plaintiff, | § | |
| VS. | § | |
| | § | |
| FRANCISCO ZARATE, *et al.*, | § | |
| | § | |
| Defendants/Third-Party | § | |
| Plaintiff/Cross-Plaintiffs, | § | |
| VS. | § | |
| | § | |
| DAVID FLORES, | § | |
| | § | |
| Third-Party Defendant/Cross-Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT ZARATE'S SECOND MOTION
## FOR SUMMARY JUDGMENT

**I.     Factual and Procedural Background**

Now before the Court is Defendant Francisco Zarate's Second Motion for Summary Judgment on the negligence claims asserted against him by Plaintiff Community Action Council of South Texas ("CAC"). (Doc. 100-1).[1] The central issues presented by this consolidated case are who caused CAC's failure to timely pay its payroll taxes, resulting in Internal Revenue Service ("IRS") penalties and interest, and who may be assessed the amounts owed. CAC alleges that it is a nonprofit organization formed over 30 years ago for the purpose of providing a variety of services to low-income residents of Starr, Jim Hogg, and Zapata Counties in Texas. 12cv18 at (Doc. 6-2 at ¶ 3). CAC has since expanded to Duval and Brooks Counties and now concentrates on providing basic health and transportation services to this five-county area. *Id.* Zarate is CAC's former Executive Director who resigned on April 14, 2007. *Id.* at ¶ 4. According to CAC, beginning on or before 2004, Zarate began a practice of failing to submit full payment of quarterly payroll taxes to the IRS as required by law. *Id.* at ¶ 5. Such payments consisted of "FICA" amounts withheld from employees' wages and matching payments from CAC. *Id.* The practice continued until November 29, 2006, when CAC's Board of Directors (hereinafter "Board") was informed that CAC owed over $2 million in unpaid taxes. *Id.* at ¶ 6. As a result, CAC has undergone "drastic changes" consisting of a substantial reduction in staff and the termination of contracts for operating various programs. *Id.* at ¶ 7. CAC has experienced "great difficulty in keeping its doors open to provide services to the community" and in "get[ting] control of the financial aspects of its operations." *Id.* By the end of 2007, CAC owed more than $3 million in delinquent payroll taxes. *Id.* On the basis of these allegations,

---

[1] Unless otherwise noted, all citations to the record are to docket entries in Civil Action No. 11cv210, into which Civil Action No. 12cv18 was consolidated.

CAC asserts that the failure to timely pay its payroll taxes and the resulting damages were proximately caused by the negligent conduct of Zarate in one or more of the following respects:

    a.    failing to use the care that a person of ordinary prudence would have used in operating CAC and in timely paying CAC's payroll taxes;

    b.    failing to disclose to the Board the decision not to timely pay CAC's payroll taxes;

    c.    failing to perform the duties imposed on each Defendant by the position of trust which each held with respect to CAC;

    d.    instructing employees not to disclose the decision to not timely pay CAC's payroll taxes; and

    e.    failing to properly supervise the work done by their employees with respect to CAC's financial affairs.

*Id.* at ¶ 9. CAC generally alleges that it suffered damages as a result of Zarate's negligence. *Id.* at ¶ 10. Further, CAC asserts that Zarate was grossly negligent in failing to disclose the existence of the delinquent payroll taxes. *Id.* at ¶ 11.[2]

Zarate initiated Civil Action No. 11cv210 on July 15, 2011, when he filed a complaint against the United States seeking refund and abatement of the IRS assessments against him for "trust fund" penalties owed by CAC for three quarterly tax periods,[3] claiming that the failure to pay was not attributable to him but to CAC's Chief Financial Officer, David Flores. (Doc. 1). The United States counterclaimed against Zarate seeking payment of the balance due. (Doc. 5).[4]

---

[2] CAC's pleading also makes allegations related to Defendants Reyna & Garza, PLLC, Guillermo Reyna, CPA, and Noel Garza, CPA (collectively, "R&G"), who provided auditing services to CAC. On September 26, 2012, the Court entered summary judgment in favor of R&G on CAC's negligence and breach of contract claims against them. (Doc. 85).

[3] Zarate's assessments are for the first and fourth quarters of 2006 and the first quarter of 2007. (Doc. 1 at ¶¶ 6, 13, and 20; *see also* Doc. 5).

[4] The United States also brought a third-party complaint against current CAC Executive Director Juan Cantu, Doroteo Garza, and Leo Bazan, claiming that these parties are liable for CAC's unpaid taxes for various quarterly tax periods. (Doc. 5). The United States' claims against Cantu have now been resolved. *See* (Docs. 86, 95). On February 16, 2012, the Court entered default against Doroteo Garza and Bazan. (Docs. 29-32). The United States has not moved for default judgment against these parties.

On January 18, 2012, the United States removed Civil Action No. 12cv18 to this Court after Zarate filed a complaint in that action requesting relief identical to that sought in Civil Action No. 11cv210. 12cv18 at (Docs. 1, 1-2 at ¶¶ 50, 57, 64); *see* 28 U.S.C. §§ 1340, 1346(a)(1), 1441(a), 1446. CAC had initially filed Civil Action No. 12cv18 on November 17, 2008 in the 229th Judicial District Court, Starr County, Texas, for the purpose of asserting its negligence claims against Zarate arising from the tax assessments at issue. 12cv18 at (Doc. 6-2). In addition to his complaint against the United States, Zarate brought a third-party complaint against Flores for his negligence in failing to submit full payment of CAC's quarterly payroll taxes to the IRS. 12cv18 at (Doc. 1-2). The Court consolidated the original and removed actions and denied CAC's request to sever and remand its claims against Zarate, over which the Court has supplemental jurisdiction. *See* (Docs. 22, 24); 02/17/12 Minute Entry; 28 U.S.C. § 1367(a).

On September 26, 2012, the Court denied Zarate's initial Motion for Summary Judgment. (Doc. 85).[5] Specifically, the Court rejected Zarate's appeal to the protections from liability afforded to an "officer" or "governing person" under Texas Business Organizations Code §§ 22.235, 3.102, and 3.105. *Id.* Further, and as discussed more fully *infra*, the Court determined that Zarate had not established as a matter of law that CAC's claims against him were barred by the applicable two-year statute of limitations. *Id.* The Court also rejected, as a basis for summary judgment, Zarate's argument that CAC had not suffered damages recoverable against Zarate because it had not yet paid its tax liabilities. *Id.* Finally, the Court found that some evidence existed to support the breach and damages elements of CAC's negligence action— namely, evidence that Zarate directed Flores to pay CAC's expenses first and its payroll taxes as

---

[5] In light of the Court's summary judgment rulings on this date and the agreed final judgments entered thereafter, the only remaining claims in this action are CAC's negligence claims against Zarate, Zarate's third-party action against Flores for negligence, and the United States' third-party complaint against Doroteo Garza and Bazan seeking recovery of the trust fund penalty assessments against them. *See* (Docs. 85, 86, 93, 95, 96); *see also* n.4.

funds became available, and that Zarate had knowledge of Flores's practice of failing to timely pay the taxes, and the resulting liabilities, and failed to inform the Board. *Id.*

Zarate's Second Motion for Summary Judgment offers one argument that he could not have made in the previous Motion—that due to the Agreed Final Judgment entered in favor of the United States and against Zarate on October 11, 2012, CAC has suffered no damages for which it can recover from Zarate. (Doc. 100-1). Zarate also renews his request for summary judgment on the grounds that the statute of limitations bars the claims against him, but offers new arguments in support of this position. *Id.* Upon review of the Motion, CAC's response, and the summary judgment record, in light of the relevant law, the Court finds that Zarate's Second Motion must be denied for the following reasons.

## II.  Summary Judgment Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Where the movant bears the burden of proof because it is asserting an affirmative defense, it must establish "'beyond peradventure *all* of the essential elements of the…defense to warrant judgment in [its] favor.'" *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780

F.2d 1190, 1194 (5th Cir. 1986)) (emphasis in original). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

### III. Zarate's Second Motion for Summary Judgment

#### A. Effect of Agreed Final Judgment on CAC's Request for Damages

The Agreed Final Judgment entered on October 11, 2012 provides that Zarate "was assessed pursuant to 26 U.S.C. § 6672 as a responsible person of Community Action Council of South Texas for withholding taxes for the first quarter and fourth quarters of 2006 and the first quarter of 2007," and that he "agrees that he is liable for these assessments in the amount of $1,258,931.35 as of October 8, 2010, plus interest until paid." (Doc. 93). In support of the argument that the Judgment precludes CAC's claims against him, Zarate points to the following statement in CAC's responses to Zarate's requests for disclosure:

> *The amount and method of calculating economic damages.*
>
> [CAC] has been penalized by the Internal Revenue Service in the sum of $1,795,417.69 for penalty and interest resulting from the failure to pay payroll taxes as of July 13, 2009. [CAC] contends that Defendants [including Zarate] are jointly and severally liable for this amount.

(Doc. 100-2, Ex. A at p.2) (emphasis in original). Zarate asserts that the penalty and interest damages CAC seeks from him are "derivative" of the United States' tax assessments against CAC and have been satisfied by Zarate in the Judgment. (Doc. 100-1). Appealing to case law providing that an injured party is ordinarily entitled to only one satisfaction for each injury, and that a settling defendant is entitled to a bar against contribution, Zarate argues that CAC has no damages for which it can seek relief against Zarate. *Id.*

As CAC points out in its response, Zarate's position appears to stem from a misunderstanding of the nature of the assessments recovered by the United States against Zarate. (Doc. 105). As explained in the Court's prior Order,[6] the Internal Revenue Code requires employers to withhold Social Security contributions and federal income taxes from their employees' wages. *Slodov v. United States*, 436 U.S. 238, 242-43 (1978); *Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1453 (5th Cir. 1993); *see also* 26 U.S.C. §§ 3102(a), 3402(a). "The withheld sums are commonly referred to as 'trust fund taxes,' reflecting the Code's provision that such withholdings are deemed to be 'a special fund in trust for the United States.'" *Slodov*, 436 U.S. at 243 (quoting 26 U.S.C. § 7501(a)); *see also Barnett*, 988 F.2d at 1453 (citing same). "If an employer withholds these trust fund taxes but fails to pay them over to the United States, the employee is nevertheless credited with payment." *Cash v. United States*, 961 F.2d 562, 565 (5th Cir. 1992) (citing *Slodov*, 436 U.S. at 243). "Thus, unless the Government has recourse against the person or persons responsible for nonpayment, the taxes will be lost." *Id.*

---

[6] *See* (Doc. 86).

(citing same). To prevent this loss of revenue, § 6672(a) of the Code imposes a "penalty" equal to the amount of the unpaid taxes on any such person (1) required to collect, account for, or pay over the withheld taxes, commonly referred to as a "responsible person," (2) who "willfully" fails to do so. *Conway v. United States*, 647 F.3d 228, 232 (5th Cir. 2011); *Barnett*, 988 F.2d at 1453; *see also Slodov*, 436 U.S. at 244-45. "Although denominated a 'penalty,' the liability imposed by section 6672 is not penal in nature since it 'brings to the government only the same amount to which it was entitled by way of the tax.'" *Turnbull v. United States*, 929 F.2d 173, 178 n.6 (5th Cir. 1991) (quoting *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir.1970)). In other words, § 6672 authorizes collection of the taxes due, not both the taxes due and an additional penalty, and "'is simply a means of ensuring that the tax which is unquestionably owed the Government is paid.'" *Id.* (quoting same). Thus, the Judgment entitles the United States to recover from Zarate, by virtue of his status as a responsible person, $1,258,931.35 in withheld sums that should have been paid by CAC to the United States. CAC does not seek to recover the withheld sums through its negligence action against Zarate, but rather the additional penalties and interest assessed against CAC due to its failure to timely pay those sums. Therefore, the damages sought by CAC would not result in a double recovery. Further, given that the Judgment represents a resolution of claims by and between the United States and Zarate and to which CAC is not a party, the Judgment is not against a "settling defendant" for the purpose of appealing to any bar against contribution. For these reasons, the Court must deny Zarate's request for summary judgment on the grounds that the Judgment precludes CAC's recovery of damages.

**B.     Statute of Limitations**

In its previous Order denying Zarate's initial Motion for Summary Judgment, now incorporated herein, the Court rejected Zarate's statute of limitations defense as a basis for summary judgment. (Doc. 85). Specifically, the Court concluded that Zarate had failed to negate the application of the "discovery rule" by failing to establish that CAC discovered or in the exercise of reasonable diligence, should have discovered the nature of its injury more than two years before filing suit. *Id.* Zarate's renewed Motion again raises his limitations defense, first appealing to agency principles to argue that notice of CAC's tax liabilities to either Flores or Zarate more than two years before the filing of suit constituted notice of the relevant injury to CAC. (Doc. 100-1). Specifically, Zarate argues that CAC received notice through any of the following: Flores's initial failure to submit timely payment of CAC's payroll taxes starting in 2001, Zarate's notice of this practice after a meeting with an IRS agent on October 12, 2005, and/or Flores's attempt through correspondence dated December 12, 2005 to negotiate with the IRS on CAC's behalf. (Doc. 100-1). To support his position, Zarate cites to case law holding that "notice to an agent, while acting within the scope of his authority and with reference to a matter over which his authority extends, is notice to the principal." *Pecan Grove Assocs. v. John L. Wortham & Son*, 1999 WL 460086, at *2 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (emphasis omitted); *Adams v. LaSalle Life Ins. Co.*, 99 S.W.2d 386, 388 (Tex.Civ.App.-Waco 1936, writ dism'd); *see also Taylor v. Taylor*, 29 S.W. 1057, 1058 (Tex. 1895); *Irvine v. Grady*, 19 S.W. 1028, 1029 (Tex. 1892); *United Fed. Life Ins. Co. v. Cloud*, 370 S.W.2d 147, 149 (Tex.Civ.App.-Eastland 1963, no writ). However, the cited cases apply this principle in the context of determining a principal's liability, not the issue of when a principal's claims accrue for limitations purposes. Moreover, Zarate's cases explain that the rationale behind this principle

"does not rest upon the theory of the legal identity of the [principal and agent]," but on the theory that "'when a principal has consummated a transaction…through an agent, it is contrary to equity and good conscience that he should be permitted to avail himself of the benefit of his agent's participation without becoming responsible as well for his agent's knowledge as for his agent's act.'" *Taylor*, 29 S.W. at 1058 (quoting *Irvine*, 19 S.W. at 1029); *see also Adams*, 99 S.W.2d at 388 (citing same). Here, where CAC premises its negligence action on Zarate's alleged breach of his duty to inform the governing Board of tax liabilities of which he and Flores had knowledge, it does not serve equity to impute that knowledge to CAC for limitations purposes. For these reasons, the Court rejects Zarate's agency argument as a basis for summary judgment on his limitations defense.

In the alternative, Zarate submits that the IRS Notice of Federal Tax Lien filed with the Starr County Clerk on December 2, 2005 gave CAC constructive notice of the relevant injury and therefore triggered the statute of limitations. (Doc. 100-1; *see also* Doc. 100-5, Ex. D). Zarate relies on case law holding that in cases of actionable fraud, where limitations begin to run when the fraud is discovered or might have been discovered through reasonable diligence, "[a] person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records." *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). This constructive notice "creates an irrebuttable presumption of actual notice." *Id.* In *Mooney*, the Texas Supreme Court applied these principles in the context of fraud claims against the executor of an estate by the decedent's former girlfriend. Observing that "[p]ersons interested in an estate admitted to probate are charged with notice of the contents of the probate records," the court concluded that the plaintiff's examination of those records would have disclosed the asserted fraud. *Id.* (citing *Salas v. Mundy*, 125 S.W. 633, 636 (Tex.Civ.App.-Amarillo 1910, writ ref'd)).

Therefore, the two-year statute of limitations began to run when the will was admitted to probate, and the plaintiff's suit filed more than four years after this date was barred. *Id.* at 84-85. The Fifth Circuit has found important to the holding in *Mooney* "the fact that Texas law charges all persons interested in an estate with knowledge of the contents of the probate records," and has therefore qualified that "the recording of a document in public records serves as constructive notice for limitations purposes only for those persons who are under an obligation to search the records." *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1369-70 (5th Cir. 1994) (holding that once mortgagee had acquired its interest as assignee, "it was not required to make continuous searches of the real property records for interests subsequently secured"). Given the nature and purpose of the Notice of Federal Tax Lien, the Court finds that CAC's governing Board did not have such an obligation. Section 6321 of the Internal Revenue Code provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest…or assessable penalty…) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The lien arises by operation of law on the date the IRS assesses unpaid taxes, and is perfected against a taxpayer without the necessity of filing any notice. *See In re Berg*, 188 B.R. 615, 618 (9th Cir. 1995); *Tex. Commerce Bank-Fort Worth, N.A. v. United States*, 896 F.2d 152, 161 (5th Cir. 1990). Another provision of the Code, § 6323, requires the filing of a notice for the lien to be valid against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor." *See* 26 U.S.C. § 6323(a); *Berg*, 188 B.R. at 618. Accordingly, at the time the IRS filed its Notice of Federal Tax Lien, a lien already existed and had been perfected against CAC. Given that the record thus far does not indicate that CAC's governing Board could have ascertained the existence of the tax assessments

giving rise to the lien until informed by Zarate and/or Flores on November 29, 2006,[7] Zarate has not established that the statute of limitations began to run at the time the lien arose.[8] The December 2, 2005 Notice made the existing lien effective against third parties, but the Board was not then obligated to search public records to discover CAC's accumulated tax liabilities—the asserted injury in this case. For these reasons, the Court rejects Zarate's argument that the filing of the Notice of Federal Tax Lien more than two years prior to suit bars CAC's claims against him.

IV.  **Conclusion**

For the foregoing reasons, the Court hereby **ORDERS** that Zarate's Second Motion for Summary Judgment is **DENIED**.

SO ORDERED this 4th day of March, 2013, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[7] *See* (Doc. 85 at p. 10) (citing evidence).

[8] Further, CAC points out in its response that it was incurring tax liabilities on a continuing basis, as Flores and/or Zarate repeatedly failed to submit timely payment of CAC's payroll taxes to the IRS without the Board's knowledge. (Doc. 105). "Although the Texas Supreme Court has 'neither endorsed nor addressed' the continuing tort doctrine, several courts of appeals have held that a cause of action for a continuing tort does not accrue until the defendant's tortious conduct ceases." *Aspenwood Apartment Corp. v. Coinmach, Inc.*, 349 S.W.3d 621, 639 (Tex.App.-Houston [1st Dist. 2011], pet. granted) (quoting *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8 (Tex. 2005) and citing additional cases) (internal citation omitted).